# IN THE COURT OF APPEALS OF IOWA

No. 19-1126
Filed November 27, 2019

**IN THE INTEREST OF C.S. and A.S.,**
**Minor Children**

**K.S., Mother,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Guthrie County, Virginia Cobb, District Associate Judge.

A mother appeals the termination of her parental rights to her two children. **AFFIRMED.**

Christine Sand of Wild, Baxter & Sand, PC, Guthrie Center, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Charles Isaacson of Charles Isaacson Law, P.C., Des Moines, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and May and Greer, JJ.

**MAY, Judge.**

The juvenile court terminated the mother and father's parental rights to A.S. and C.S. Only the mother appeals. She argues (1) grounds for termination were not proven, (2) termination was not in the children's best interests, (3) her strong bond with the children precludes termination, and (4) the State did not provide reasonable efforts toward reunification. We affirm.

## I.  Facts and Prior Proceedings

In January 2015, A.S. was born premature. At the time, the mother and father were living in Reno, Nevada. A.S. remained in neonatal intensive care for about five months. She was admitted to the hospital again in June 2015 due to bruising on her left arm. But she was released back into her parents' care.

Then, in September, the mother again sought emergency care for A.S. This time, A.S. presented with a broken left arm. Both parents claimed they had no idea how A.S. was injured. The Nevada Department of Social Services (Nevada DSS) became involved. A.S. was placed in the care of her maternal grandparents while Nevada DSS investigated. Ultimately, she was returned to the parents.

C.S. was born in December 2015. A few months later, the father left the mother and children. He has maintained little to no contact with the children.

Later, the mother met a man online. His name was David. He lived in Iowa. The mother decided to move in with him. So, in May 2016, she moved with C.S. and A.S. from Nevada to Iowa to live with David.

In July, the Iowa Department of Human Services (DHS) became involved after C.S. was admitted to the hospital. He had a skull fracture plus various bruises at different healing stages. At first, the mother and David claimed the skull fracture

was caused by a clip-on fan that fell on C.S.'s head during the night. But a medical report found the mother's explanations were "insufficient for the severity and characteristics of [C.S.]'s injuries."

The children were removed from the mother's care and placed with a foster family. The mother eventually ended her relationship with David and moved into her own apartment. David entered an *Alford*[1] plea to child endangerment in connection with C.S.'s injuries.

In April and May 2017, the mother participated in a parenting assessment. The assessment revealed significant concerns, including the mother's "ambivalence about [C.S.]'s injuries." The mother's inability to parent was characterized as "a significant risk to the children." Moreover, the assessment found the mother "needs therapeutic help to reconcile her need to provide for the children's special physical, mental and developmental needs with her pattern of impulsive and high risk decision making that place her children in vulnerable living circumstances that are not stable or safe."

The State petitioned for termination of both parents' rights. The juvenile court found grounds for termination were proven as to the mother under Iowa Code section 232.116(1)(d), (e), (f), and (h) (2017). The mother now appeals.[2]

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (permitting a defendant to plead guilty to a crime without admitting participation in the underlying facts that constitute the crime).
[2] As to the father, the juvenile court found grounds were proven under Iowa Code section 232.116(1)(b), (d), (e), (f), (h), and (i). But the father does not appeal. So this appeal focuses solely on the mother's claims on appeal.

## II.    Standard of Review

We review termination proceedings de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III.    Analysis

We generally use a three-step analysis to review the termination of a parent's rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  We must determine: (1) whether a ground for termination has been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination.  *Id.* at 472–73.  Finally, we consider any additional arguments raised by the appealing parent.

### A.  Grounds for Termination

We first determine whether the State has proved grounds for termination under Iowa Code section 232.116(1).  *Id.*  The juvenile court found grounds for termination under Iowa Code section 232.116(1)(d), (e), (f), and (h).[3]  "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the

---

[3] We note the juvenile court also found grounds for termination were established under Iowa Code section 232.116(1)(b) and (i) as to the father.  The mother provides arguments for why these grounds were not satisfied.  Because these grounds only apply to the father and he does not appeal, we need not address these grounds.

record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under Iowa Code section 232.116(1)(f) for A.S. and Iowa Code section 232.116(1)(h) for C.S.

Section 232.116(1)(f) authorizes termination of a parent's parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Section 232.116(1)(h) is nearly identical except it applies to a child who is "three years of age or younger" and only requires the child be removed "for at least six months of the last twelve months, or for the last six consecutive months."

The mother only challenges the fourth element for each of these grounds.[4] She points out she has "stable housing, a steady job, and months of successful parenting." Thus, she argues, the State failed to prove the children could not be returned to her at the time of the termination hearing.

We disagree. The parenting assessment revealed the mother was "ambivalent" toward C.S.'s very serious injuries. The juvenile court echoed this concern and highlighted the mother's refusal to acknowledge any responsibility for C.S.'s injuries. Likewise, the mother's attitude toward the children's injuries gives

---

[4] This element is identical in both grounds. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). We choose to address both paragraphs concurrently.

us little confidence she would ensure their safety in the future. *See In re M.L.*, 2011 WL 5389620, at *4 (Iowa Ct. App. Nov. 9, 2011) (noting the parents have no insight into how the injury to the child occurred and finding "[w]ithout that insight, the services provided to, and received by, the parents cannot ensure that an abused child . . . or any other child under the supervision of the parents . . . would be safe").

Moreover, the record shows the mother has made impulsive decisions without appreciating how her actions affect the children. A key example is the mother's decision to move from Nevada to Iowa with her two young children to live with someone she met online. As the juvenile court noted, the mother "entered into a romantic relationship with this man and placed her children in his care, knowing nothing more about him other than he hadn't had much experience with children or babies." Likewise, the parenting assessment found the mother's move "with two medically needy children" to be a high-risk behavior that placed the children "in vulnerable living circumstances that are not stable or safe."

Like the juvenile court, we conclude the children could not have been safely returned to the mother at the time of the termination hearing. Grounds for termination have been proven, and the first step of our analysis is satisfied.

### B. Best Interests

Next, we consider the best interests of the children. *See* Iowa Code § 232.116(2). Our analysis is governed by Iowa Code section 232.116(2), which states:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing

and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren].

The mother claims termination is not in the children's best interests because they are bonded to their mother. But safety is a "defining element[]" of our best-interest analysis. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring); *see* Iowa Code § 232.116(2) (noting "the court shall give primary consideration to the child[ren]'s safety"). The mother's impulsive behavior and lack of insight present an ongoing threat to the children's safety. Indeed, in two of her recent romantic relationships, the children have been physically abused. So, like the juvenile court, we conclude termination is in the children's best interests.

### C. Permissible Exceptions

We now look at the exceptions under Iowa Code section 232.116(3). The parent bears the burden of proving an exception exists. *A.S.*, 906 N.W.2d at 476.

Here, the mother asserts her strong bond with her children precludes termination under Iowa Code section 232.116(3)(c). She contends the bond is "so strong that it has survived and thrived for two years of removal and minimal contact."

Iowa Code section 232.116(3)(c) authorizes the juvenile court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The juvenile court acknowledged the mother and children were bonded. But the court found their bond was "insufficient to defeat the overriding concern for the children's safety in [the mother's] care."

We agree. "[O]ur consideration must center on whether the child[ren] will be disadvantaged by termination." *D.W.*, 791 N.W.2d at 709. As noted in the parenting assessment, the children are "very young and need stability, routine, consistency, and strong parenting." Both children were born premature and have resulting medical needs. And now both children have received significant physical injuries at a very young age. Given the mother's history of abusive relationships, as well as her failure to acknowledge the dangers to which she has exposed her children, we do not believe their need for safety is outweighed by their bond with the mother.

### D. Additional Claims

Finally, the mother argues the State did not provide reasonable efforts toward reunification. The State is required "to 'make every reasonable effort' to reunify the family as quickly as possible, consistent with the best interests of the children." *In re S.H.*, No. 15-1939, 2016 WL 757421, at *4 (Iowa Ct. App. Feb. 24, 2016) (quoting Iowa Code § 232.102(7) (2016)); *see* Iowa Code § 232.102(9) (2019). The mother argues DHS improperly limited her visitation with the children. We disagree.

The mother's first request for a reasonable-efforts determination was made after DHS alleged the mother violated the terms of her visitation agreement. Following a hearing, the juvenile court found the mother had "attempt[ed] to circumvent the plain reading of the visitation agreement." The juvenile court ordered visitation remain within DHS's discretion.

The following month, the mother again requested a reasonable-efforts determination. She argued DHS was not providing reasonable efforts because

DHS limited her visitation to two professionally-supervised visits per week. But the juvenile court found no lack of reasonable efforts because the mother manipulated the original visitation plan and, moreover, nonprofessional supervision was inadequate.

"The concept of reasonable efforts includes a visitation agreement designed to facilitate reunification *while protecting the children from the harm prompting the removal.*" *In re S.P.*, No. 16-1919, 2017 WL 108798, at *3 (Iowa Ct. App. Jan. 11, 2017) (emphasis added). Here, the mother has put both children in situations that resulted in physical harm. Upon discovering the mother was not being properly supervised under the original visitation plan, DHS required professional supervision to ensure the children remained safe. We believe this was reasonable and necessary.

As the juvenile court found, the mother has not properly addressed her "irrational and risky thinking and acting" and that behavior has "contributed to or caused the children's injuries." *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("If services directed at removing the risk or danger responsible for a limited visitation scheme have failed its objective, increased visitation would most likely not be in the child[ren]'s best interests."). Supervision at her visitations was necessary to keep the children safe. Nor was increased visitation in the children's best interests. The State did not fail to make reasonable efforts toward reunification.

IV. **Conclusion**

The juvenile court properly terminated the mother's parental rights.

**AFFIRMED.**